UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK ESCOBAR MENECES,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LaROSE; GREGORY ARCHAMBAULT; MARKWAYNE MULLIN; and TODD BLANCHE,<br><br>                              Respondents. | Case No.: 3:26-cv-4082-JES-MSB<br><br>**ORDER GRANTING WRIT FOR PETITION OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Frank Escobar Meneces' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's OSC order (ECF No. 2), Respondents filed a response and Petitioner filed a traverse. ECF Nos. 6, 7. After due consideration and for the reasons set forth below, the Court **GRANTS** the petition.

## I.    BACKGROUND

Petitioner is a native of Guatemala who came to the United States in February 2024 when he was 17 years old. ECF No. 1 ¶ 10. He was classified as an Unaccompanied Alien Child ("UAC") and placed into custody of the Office of Refugee Resettlement ("ORR"). *Id.* On February 24, 2024, Petitioner was released by ORR to his father's custody in

Florida. *Id.* ¶ 11. Petitioner subsequently filed for asylum on May 24, 2024, while he was still a UAC. *Id.* ¶ 12.

Petitioner was first placed into removal proceedings in May 2025. ECF No. 1-2. Petitioner moved to terminate those proceedings, arguing that as a UAC, USCIS has the exclusive jurisdiction over his asylum petition. ECF No. 1 ¶ 15. Petitioner states that on July 23, 2025, the Immigration Judge ("IJ") granted his motion to terminate on that exact ground. *Id.* ¶ 17.

On June 25, 2026, Petitioner was arrested by U.S. Border Patrol while on his way to work in Florida. *Id.* ¶ 18. Petitioner was served with a new Notice to Appear at that time. ECF No. 1-3. He has since been transferred to Otay Mesa Detention Center, where he is currently being held. ECF No. 1 ¶ 24.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and .).. . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    DISCUSSION

In their return, Respondents provide an abbreviated response to the petition. ECF No. 6. Respondents take the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225 but "acknowledge that this Court, and other Courts in this District, have

repeatedly reached the opposite conclusion under same and/or similar facts." *Id.* at 2 (citing multiple cases so holding). As such, Respondents state that "the facts here are not materially distinguishable from those cases for purposes of the Court's decision" and that they "defer to the Court as to the appropriate relief." *Id.* at 3.

First, the Court finds that Petitioner is not subject to mandatory detention under § 1225 as Respondents contend. Many courts within this Circuit have explicitly found that non-citizens that entered the United States as UACs and were subsequently released to a sponsor by ORR are not subject to the mandatory detention framework. *See, e.g.*, *S.K. v. Hermosillo*, No. 2:26-CV-00789-TLF, 2026 WL 936458, at *3 (W.D. Wash. Apr. 7, 2026); *Reyes v. Hernandez*, No. 2:26-CV-00633-GJL, 2026 WL 820481, at *2 (W.D. Wash. Mar. 25, 2026); *Torres v. Wamsley*, 807 F. Supp. 3d 1266, 1272–73 (W.D. Wash. 2025); *Quinonez Torres v. Hermosillo*, No. 2:26-cv-00076-TLF, 2026 WL 547591, at *6 (W.D. Wash. Feb. 23, 2026); *Perez-Mendez v. Warden, Cal. City Corr. Ctr.*, No. 2:26-cv-01272-DAD-AC, 2026 WL 947263 (E.D. Cal. Apr. 8, 2026); *Lopez v. Larose*, No. 3:26-CV-02293-LEK-GC, 2026 WL 1284870, at *2–3 (S.D. Cal. May 11, 2026).

Even more significantly, this Court has already held that non-citizens that entered the United States as UACs and were subsequently released to a sponsor by ORR have a protected liberty interest in remaining free from detention, explaining as follows:

> The [Trafficking Victims Protection Reauthorization Act ("TVPRA")] governs the detention of unaccompanied minors who are apprehended at or near the U.S. border, and requires them to be "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(1). The TVPRA allows minors to be released to the custody of guardians upon determination the child is not a danger to themselves or community and does not present a flight risk. *See id.* at 1232(c)(2)(a). Aliens afforded release under the TVPRA have the same due process protections regarding re-detention as those granted parole or release as adults: at a minimum, they are entitled to notice and opportunity to be heard regarding the individualized changed circumstances justifying revocation in their case. As this Court has previously explained, notice and opportunity to be heard regarding the revocation of a liberty interest like parole or supervised release must be meaningful to be constitutionally sufficient, which requires that the

3:26-cv-4082-JES-MSB

government comport with the requirements of the statutes governing that individual's status.

*Perez v. Casey*, No. 26-CV-0655-JES-BLM, 2026 WL 370397, at *1-2 (S.D. Cal. Feb. 10, 2026) (citations omitted). The Court concluded that "Petitioner was granted release under the TVPRA, creating a liberty interest protected by the Due Process clause" that could not be taken away without notice and opportunity to be heard. *Id.* Other courts have similarly held the same. *See, e.g.*, *Orellana-Batres v. Casey*, No. 3:26-CV-00801-RBM-MSB, 2026 WL 1075655, at *3–4 (S.D. Cal. Apr. 20, 2026); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (finding a due process violation with similar circumstances under *Mathews v. Eldridge* framework); *S.K.*, 2026 WL 936458, at *3–4 (same); *Aguilar v. Hermosillo*, No. 2:26-CV-00537-BAT, 2026 WL 706658, at *3 (W.D. Wash. Mar. 13, 2026).

The Court adopts the reasoning of these prior courts and finds that Petitioner has a protected liberty interest subject to due process rights given his UAC status and prior release by the ORR. There is no indication that he was granted any due process when he was redetained in June. The Court further finds, as many other courts have, that release is the appropriate relief for this violation. *See Perez*, 2026 WL 370397, at 2; *R.D.T.M.*, 2025 WL 2617255, at *6; *Orellana-Batres*, 2026 WL 1075655, at *4; *Singh v. Noem*, No. 26-CV-1081-BJC-DDL, 2026 WL 686313, at *2 (S.D. Cal. Mar. 11, 2026); *Aguilar*, 2026 WL 706658, at *3.

## IV.　CONCLUSION

Thus, the Court **GRANTS** Petitioner's writ of habeas corpus. Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his prior release that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **August 5, 2026**, confirming that Petitioner has been released. In light of this relief, the Court **DENIES AS MOOT** the motion for immediate release.

//

//

4

The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: July 30, 2026

_____

Honorable James E. Simmons Jr.
United States District Judge

3:26-cv-4082-JES-MSB